# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

* * *

| | |
|---|---|
| DAVID LOESEL, | Case No. 2:19-cv-01447-RFB-VCF |
| Plaintiff, | **ORDER** |
| v. | |
| COOPER NATIONAL DEFAULT SERVICING CORPORATION PREMIER MORTGAGE SERVICES OF WASHINGTON HSBC BANK USA NATIONAL ASSOCIATION MORTGAGE ELECTRONIC REGISTRATION SYSTEMS | |
| Defendant(s). | |

## I. INTRODUCTION

Before the Court are Plaintiff David Loesel's ("Plaintiff") Motion for a Temporary Restraining Order (ECF No. 4), Plaintiff's Motion for a Preliminary Injunction (ECF No. 5), and Defendants Cooper, HSBC Bank USA National Association, Mortgage Electronic Registration Systems's ("Defendants") Motion to Dismiss (ECF No. 7). For the following reasons, the Court grants Defendants' motion and denies the other motions.

## II. PROCEDURAL BACKGROUND

Plaintiff David Loesel filed his complaint in this matter on August 19, 2019, with the following causes of action asserted against Defendants: 1) lack of standing to foreclose; 2) fraud in the concealment; 3) fraud in the inducement; 4) intentional infliction of emotional distress; 5) quiet title; 6) slander of title; 7) declaratory relief; 8) violations of TILA/HOEPA (Truth in Lending Act, 15 U.S.C. §§ 1601 – 1667f); 9) Violations of REPSA (Real Estate Settlement Procedures Act,

12 U.S.C. §§ 2601 – 2617); and 10) rescission. ECF No.1 On September 3, 2019, Defendants Cooper, HSBC Bank USA National Association, and Mortgage Electronic Registration Systems ("Defendants") moved to dismiss the complaint. ECF No. 7. Defendants also filed a response in opposition to Plaintiff's Motions for a Temporary Restraining Order and Preliminary Injunction on that same date. ECF No. 8. Plaintiff filed an opposition on September 18, 2019. ECF No. 12. Defendants replied on September 24, 2019. ECF No. 13. Plaintiff filed a notice of lis pendens on October 1, 2019.

### III. FACTUAL ALLEGATIONS

Plaintiff alleges the following: On or around October 31, 2006, Plaintiff, a disabled military veteran, purchased property located at 3305 Perching Bird Lane, North Las Vegas, Nevada 89084 ("Subject Property"). Plaintiff purchased this property through a loan with non-party MORTGAGEIT. The note was secured by a First Mortgage/Trust Deed on the Property in favor of MORTGAGEIT. The original beneficiary and nominee under the Mortgage/Deed of Trust was MERS. A Notice of Default was filed on the property on October 8, 2018 and now Defendants (Plaintiff does not specify which defendant in his complaint) wish to foreclose on the property. Plaintiff maintains that his loan was not properly assigned and/or transferred to Defendants in accordance with the Pooling and Servicing Agreement ("PSA") to which his loan was subject after it was securitized and transferred to a Real Estate Mortgage Investment Conduit ("REMIC") Trust, which Plaintiff alleges requires that there be a complete and unbroken chain of transfers/ assignments. Plaintiff also alleges that there is a pending case in the Eighth Judicial District Court appealing an eviction order with the Las Vegas Justice Court. There is also a pending foreclosure sale, the date of which Plaintiff does not specify in his complaint. Plaintiff now seeks a temporary restraining order, preliminary injunction, and permanent injunction to enjoin any foreclosure proceedings and a declaration by this Court that any sale of the Subject Property is unlawful.

### IV. LEGAL STANDARD

#### a. Motion to Dismiss

In order to state a claim upon which relief can be granted, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P.

8(a)(2). In ruling on a motion to dismiss for failure to state a claim, "[a]ll well-pleaded allegations of material fact in the complaint are accepted as true and are construed in the light most favorable to the non-moving party." Faulkner v. ADT Security Servs., Inc., 706 F.3d 1017, 1019 (9th Cir. 2013). To survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," meaning that the court can reasonably infer "that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted). A pro se complaint " however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007).

### b. Temporary Restraining Orders and Preliminary Injunctions

A temporary restraining order (TRO) may be issued without notice to the adverse party only if the moving party: (1) provides a sworn statement clearly demonstrating "that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition," and (2) sets forth the efforts made to notify the opposing party and why notice should not be required. Fed. R. Civ. P. 65(b)(1). TROs issued without notice "are no doubt necessary in certain circumstances, but under federal law they should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." Reno Air Racing Ass'n v. McCord, 452 F.3d 1126, 1131 (9th Cir. 2006) (quoting Granny Goose Foods, Inc. v. Bhd. of Teamsters, 415 U.S. 423, 439 (1974)).

The analysis for a temporary restraining order is "substantially identical" to that of a preliminary injunction. Stuhlbarg Intern. Sales Co, Inc. v. John D. Brush & Co., Inc., 240 F.3d 832, 839 n.7 (9th Cir. 2001).

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 22 (2008). To obtain a preliminary injunction, a plaintiff must establish four elements: "(1) a likelihood of success on the merits, (2) that the plaintiff will likely suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in its favor, and (4) that

the public interest favors an injunction." Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc., 758 F.3d 1069, 1071 (9th Cir. 2014) (citing Winter, 555 U.S. 7, 20 (2008)). A preliminary injunction may also issue under the "serious questions" test. Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1134 (9th Cir. 2011) (affirming the continued viability of this doctrine post-Winter). According to this test, a plaintiff can obtain a preliminary injunction by demonstrating "that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor," in addition to the other Winter elements. Id. at 1134 – 35(citation omitted).

### c. Supplemental Jurisdiction

When a federal district court has original jurisdiction over a claim, it may exercise supplemental jurisdiction over "all other claims that are so related to the claims . . . within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). However, district courts may decline to exercise supplemental jurisdiction over such claims if 1) the claim raises a novel or complex issue of State law; 2) the [state law] claim substantially predominates over the claim or claims over which the district court has original jurisdiction; 3) the district court has dismissed all claims over which it has original jurisdiction, or 4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. 28 U.S.C. § 1367(c)(1) – (c)(4).

When determining whether state law claims substantially predominate, the Court may consider the scope of the state and federal issues, the terms of proof required by each type of claim, the comprehensiveness of the remedies, and the ability to dismiss the state claims without prejudice. United Mine Workers v. Gibbs, 383 U.S. 715, 726–27 (1996). A court may find that state law claims predominate "where 'a state claim constitutes the real body of a case, to which the federal claim is only an appendage'—only where permitting litigation of all claims in the district court can accurately be described as allowing a federal tail to wag what is in substance a state dog." De Ascencio v. Tyson Foods, Inc., 342 F.3d 301, 309 (3d Cir. 2003) (internal citations omitted).

### V. DISCUSSION

Construing Plaintiff's documents liberally as the Court is required to, the Court finds that Plaintiff has failed to plead factual allegations sufficient to support any of his federal claims, which are the basis of the Court's subject matter jurisdiction in this case, and thus grants Defendants' motion to dismiss. Because the Court grants Defendants' motion to dismiss, it also denies Plaintiff's motions for a temporary restraining order and a preliminary injunction, as Plaintiff cannot demonstrate a likelihood of success on the merits of his claims.

The Court proceeds to examine each federal claim in turn.

### a. Violations of TILA and HOEPA

Plaintiff alleges that Defendants violated the Truth in Lending Act (TILA) and the Home Ownership and Equity Protection Act (HOEPA). Truth in Lending Act, 15 U.S.C. §§ 1601 – 1666j; Home Ownership and Equity Protection Act, 15 U.S.C. § 1639.

Congress passed the TILA in 1966. As Congress itself states in its congressional findings, the purpose of the Act was to "assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit." 15 U.S.C. § 1601. In 1994, Congress amended the TILA and passed the HOEPA. Home Ownership and Equity Protection Act of 1994, 15 U.S.C. § 1639. HOEPA was passed with the intent to protect vulnerable consumers from predatory mortgage lending practices. See S. Rep. No. 103-69, at 28 (1993) (referring to "the damage that can be caused by unscrupulous creditors making High Cost Mortgages"). HOEPA, among other things, prohibits or restricts disadvantageous prepayment penalties and balloon payments, as well as other certain acts or practices. 15 U.S.C. § 1639.

A party may allege TILA violations if they can show that there were required consumer disclosures that they did not receive. 15 U.S.C § 1640(a). In most cases, there is a one-year statute of limitation for TILA disclosure violations. 15 U.S.C. § 1640(e).

In order to assert a HOEPA violation, a party must show that their loan is covered by HOEPA. 15 U.S.C. § 1602(b)(b). The HOEPA requires loans to meet three triggers in order to fall under the special protections of the law. 15 U.S.C. § 1602(b)(b). The first trigger is based on the annual percentage rate of the loan, the second on the total amount of points and fees charged, and

the third on the timing and amount of prepayment penalties built into the loan term. 15 U.S.C. § 1602(b)(b). When any of these triggers are met, HOEPA protections are invoked.

Plaintiff alleges that Defendants have violated HOEPA/TILA specifically by:

> failing to provide Plaintiff with accurate material disclosures required under TILA/HOEPA and not taking into account the intent of the State Legislature in approving this statute which was to fully inform home buyers of the pros and cons of adjustable rate mortgages in a language (both written and spoken) that they can understand and comprehend; and advise [sic] them to compare similar loan products with other lenders. It also requires the lender to offer other loan products that might be more advantageous for the borrower under the same qualifying matrix.

Pl.'s Compl. at ¶ 136, ECF No. 1

Plaintiff fails to indicate which specific TILA disclosures he did not receive, and at what point in time he failed to receive them. Plaintiff also fails to specify which defendants did not provide necessary TILA documents, as the liability of each defendant will vary depending on whether that defendant is the lender, mortgage servicer, or assignee of the original note. See e.g., 15 U.S.C. § 1641(f) (servicers are generally not liable for TILA violations unless they were the owner of the original debt obligation). Plaintiff also does not specify or allege any facts that indicate that his loan triggered the HOEPA disclosure requirements. He does not allege or specify 1) the annual percentage rate of the loan; 2) amount of points or fees charged, or 3) the timing and amount of any prepayment penalties. Indeed, Plaintiff does not even state the full amount of the loan in his complaint, TRO, or his preliminary injunction motion. Construing Plaintiff's documents liberally as the law requires, Plaintiff has not alleged facts sufficient to state either a TILA or HOEPA claim. Further, as Defendants argue in their motion to dismiss, to the extent that the alleged failures to disclose occurred when Plaintiff first originated his loan with MortgageIt, such claims would be time-barred under 15 U.S.C. § 1640(e), as well over a year has passed since Plaintiff originated his loan in 2006. For all these reasons, the Court finds that Plaintiff does not have a cognizable HOEPA/TILA claim and does not have any likelihood of success on the merits of this claim.

///

**b. Violation of RESPA**

Plaintiff also alleges that Defendants violated the Real Estate Settlement Procedures Act (RESPA) (12 U.S.C. § 2601 *et seq*). "Congress enacted RESPA in 1974 to protect home buyers from inflated prices in the home purchasing process. It sought to increase the supply of information available to mortgage consumers about the cost of home loans . . . and to eliminate abusive practices such as kickbacks, referral fees, and unearned fees." Schuetz v. Banc One Mortg. Corp., 292 F.3d 1004, 1009 (9th Cir. 2002). Plaintiff alleges that Defendants violated the RESPA "because the payments between the Defendants were misleading and designed to create a windfall." Pl.'s Compl. at 24, ECF No. 1. He further explains that "[t]he interest and income that Defendants have gained is disproportionate to the situation . . . due directly to Defendant's failure to disclose that they will gain a financial benefit while Plaintiff suffer[sic] financially as a result of the loan product sold to Plaintiff." Id. Plaintiff does not specify which provisions of RESPA he is referring to, but construing his complaint liberally as is required, the Court infers that Plaintiff could be referring to the provision of RESPA that forbids 1) exchange of fees or kickbacks in consideration for referrals to a real estate settlement service or 2) payments or receipt of charges for rendering real estate settlement service for services that were not actually performed. 12 U.S.C. §§ 2607(a), (b). The facts that Plaintiff has alleged do not support a cognizable claim under either of these prongs. The facts also do not support cognizable RESPA violations for 1) charging fees for preparation of truth-in-lending, uniform settlement, or escrow account statements, or 2) requiring advance deposits in escrow accounts—the only remaining RESPA provisions the Court finds that Plaintiff could be referring to. 12 U.S.C. §§ 2609 – 610. Furthermore, to the extent that any of these alleged kickbacks or violations occurred in 2006 when the loan was originated, they would be time-barred under 12 U.S.C. § 2614, which provides either a three or one year statute of limitation depending on the nature of the violation. 12 U.S.C. § 2614. For this reason the Court finds that Plaintiff does not have a cognizable RESPA claim and does not have any likelihood of success on the merits of this claim.

**c. Rescission Under TILA Claim**

Plaintiff's final federal claim includes a request of rescission of the loan subsequent to the

rescission provision of the TILA. 15 U.S.C. § 1635. Section 1635 allows a consumer to rescind a consumer credit transaction in which a non-purchase lien or security interest is placed on the consumer's principal dwelling within three business days following the consummation of the transaction or after the delivery of the required TILA disclosures and rescission forms, whichever is later. 15 U.S.C. § 1635. However the TILA is also clear that "residential mortgage transactions" do *not* fall under this category. The TILA defines "residential mortgage transactions" as transactions "in which a mortgage, deed of trust, purchase money security interest arising under an installment sales contract, or equivalent consensual security interest is created or retained against the consumer's dwelling to finance the acquisition or initial construction of such dwelling." 15 U.S.C. § 1602(x). The Court finds that the loan described by Plaintiff falls within the "residential mortgage transaction" category, because it was a loan secured by a deed of trust to finance the acquisition of the consumer's dwelling, and so Plaintiff has no rescission rights. The Court thus finds that Plaintiff cannot be granted relief on his TILA rescission claim and has no likelihood of success on the merits of it.

### d. Supplemental Jurisdiction Over Plaintiff's State Law Claims

The Court is sympathetic to Plaintiff's plight—losing one's home in foreclosure is a terrible ordeal. However, this case is clearly one in which the "federal tail wags behind the state dog." De Ascencio v. Tyson Foods, Inc., 342 F.3d 301, 309 (3d Cir. 2003) (internal citations omitted). Plaintiff brought this case in federal court seeking an injunction or temporary restraining order to prevent foreclosure on his home, but in his complaint Plaintiff brings ten causes of action, only three of which allege violations or seek remedies grounded in federal law. As the Court has already discussed, Plaintiff has failed to plead any federal claims in his complaint for which relief may be granted, and is unlikely to succeed on the merits of any of his federal claims. The sheer number of state law claims that Plaintiff brings leads the Court to conclude that these claims predominate the case, and thus the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims and dismisses those claims as well. 28 U.S.C. § 1367(c)(3) (stating that a district court "may decline to exercise supplemental jurisdiction" if "it has dismissed all claims over which it has original jurisdiction."). See also Sanford v. MemberWorks, Inc., 625 F.3d 550, 561 (9th Cir. 2010)

(upholding a district court's decision not to exercise supplemental jurisdiction over state law claims after dismissing federal claims).

Because the Court declines to exercise supplemental jurisdiction of Plaintiff's claims, there is no longer a pending lawsuit to support the lis pendens that Plaintiff filed. Nev. Rev. Stat. § 14.010; Rabino v. Asset Foreclosure Servs., Inc., No. 2:14-cv-00735-APG-NJK, 2015 WL 1186518 (D. Nev. Mar. 16, 2015) (ordering cancellation of lis pendens where court declined to exercise supplemental jurisdiction over state law claims). Accordingly, the Court orders that the lis pendens in this case be expunged.

### VI. CONCLUSION

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss (ECF No. 7) is GRANTED. Plaintiff's complaint is dismissed with prejudice.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for a Temporary Restraining Order (ECF No. 4), and Plaintiff's Motion for a Preliminary Injunction, (ECF No. 5) are DENIED.

**IT IS FURTHER ORDERED** that the lis pendens in this case (ECF No. 15) is expunged. The Clerk of the Court is instructed to close the case.

DATED: October 17, 2019.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**